UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 06-14019-CIV-MARTINEZ

JANET BOWIE PATTERSON, TRUSTEE,

      Plaintiff,

v.

GEORGE STATHAS, CLOCK TOWER
PROPERTIES, LLC AND JOSEPH
MARCONI,

      Defendants.
_____/

JOSEPH MARCONI,

      Counterclaimant, Cross-claimant
      and Third-Party Plaintiff,

v.

JANET BOWIE PATTERSON,

      Counterdefendant,

GEORGE STATHAS and CLOCK
TOWER PROPERTIES, LLC,

      Cross-defendants; and

RACQUET CLUB OF VERO BEACH
CONDOMINIUM ASSOCIATION; SUE OTT;
HOBE POLLARD; MIKE BALSAN; and
CHARLES VOGT,

      Third-Party Defendants.
_____/

## THIRD PARTY DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF DAVID M. RICHMOND

      Third Party Defendants, RACQUET CLUB OF VERO BEACH CONDOMINIUM

ASSOCIATION (hereinafter, "the Association), and individually named members of the

CASE NO.:   06-14019-CIV-MARTINEZ

Association's Board of Director's, SUE OTT, MIKE BALSAN, CHARLES VOGT, and HOBE POLLARD (collectively known as "Third Party Defendants"), by and through undersigned counsel, hereby file their Motion to Strike or Exclude the Testimony of David M. Richmond, and in support thereof, the Third Party Defendants would state the following:

## I.          PROCEDURAL FACTS

Third Party Plaintiff, Joseph Marconi (hereinafter, "Third Party Plaintiff" or "Marconi"), submitted his Supplement to Rule 26 Disclosure, on August 23, 2006. Mr. Richmond rendered two opinions relating to the third party claim brought by Marconi against the Association and the individually named members of the Association's Board of Directors. (Exhibit "A"). The deposition of David Richmond was conducted on August 30, 2006. On September 5, 2006, Third Party Defendants moved to exclude Mr. Richmond from testifying on grounds that his opinions, under the Federal Rules and *Daubert*'s three part inquiry, were both unreliable and irrelevant.

On October 3, 2006, this court entered an Omnibus Order relative to the various pending motions and discovery. In short, the Court extended discovery until February 23, 2007, denied the pending motions without prejudice, and directed that all dispositive and *Daubert* motions be filed by March 1, 2007. Despite the additional time provided by the Court, Marconi has failed to cure any of the deficiencies previously raised by Third-party Defendants. In fact, Marconi took absolutely <u>no steps</u> to cure the deficiencies raised by the Third-Party Defendants. Thus, the instant motion is necessary, as under the Federal Rules and *Daubert*'s three part inquiry, David Richmond's opinions are both unreliable and irrelevant.

## II.         LEGAL MEMORANDUM

## A.    FRAMEWORK FOR ASSESSING THE ADMISSIBILITY OF EXPERT TESTIMONY

Opinion testimony is generally disfavored at trial. *See,* Hon. Charles R. Richey, Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence, 154 F.R.D. 537 (1994) (stating, "[h]istorically, both lay and 'expert' opinion evidence

CASE NO.:  06-14019-CIV-MARTINEZ

were viewed with skepticism by the courts... Mere opinions were considered unreliable bases for testimony"). Given this general aversion, expert testimony must meet strict requirements before it is allowed at trial and is given the court's imprimatur of being the testimony of an "expert". As explained below, Mr. Richmond's testimony does not meet those strict requirements. Accordingly, he should be precluded from testifying. Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702, the Supreme Court has mandated that trial courts exercise vigilance in assessing the admissibility of expert testimony because of its potentially misleading and powerful influence on untrained jurors. *Daubert v. Merrel Dow Pharm.,* 509 U.S. 579, 595 (1993). District judges must act as "gatekeepers" to ensure that evidence is both scientifically relevant and reliable. *Allison v. McGhan Med. Corp.,* 184 F.3d 1300 (11th Cir. 1999); *Kuhmo Tire Co. v. Carmichael,* 526 U.S. 137 (1999). The Eleventh Circuit has recognized the great weight that juries often give scientific or technical testimony explains "why the trial judge plays an important role as the gatekeeper in monitoring the evidentiary reliability of such testimony." *Michigan Millers Mut. Ins. Corp. v. Benfield,* 140 F.3d 915, 920 (11th Cir. 1998).

In this Circuit, the Court should conduct a "rigorous three-part inquiry" to determine the admissibility of expert testimony: (1) whether the expert is qualified to testify competently regarding the matters he intends to address; (2) whether the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.,* 326 F.3d 1333 (11th Cir. 2003). Under this exacting analysis of the foundations for expert testimony, it is clear that Mr. Richmond is not qualified, nor is his proposed testimony reliable or relevant to meet the standards for admissibility under Rule 702.

### 1.  Experts Must be Qualified to Offer Opinion Testimony at Trial

Part of the "gatekeeping" function is an extensive scrutiny of a proposed expert's qualifications. Expert testimony is only admissible if offered by someone "qualified as an expert by

-3-

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 - (561) 383-9200 - (561) 683-8977 FAX

CASE NO.:  06-14019-CIV-MARTINEZ

knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Expertise in one disciple, however, does not give an expert license to testify in other distinct disciplines. *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (noting "experience standing alone [is not] a sufficient foundation rendering reliable any conceivable opinion the witness may express"). For example, in *U.S. v. Paul*, 175 F.3d 906 (11th Cir. 1999), an attorney's testimony on handwriting analysis was excluded, even though he had done some research on the issue because "[h]is skill, experience, training and education as a lawyer did not make him any more qualified to testify as an expert on handwriting analysis than a lay person who read the same articles." *Id* at 912. Thus, there must be a connection between the qualification and the opinion expressed.

### 2.     Expert Opinions Must be Derived from a Reliable Methodology

Even if the Court determines the witness is "qualified" as an expert, he should be excluded from testifying if his testimony is not reliable. *Allison*, 184 F.3d at 1316 (affirming exclusion even though witness was expert in field at issue). Indeed, Eleventh Circuit case law "plainly establishes that one may be considered an expert but still offer unreliable testimony." *Frazier*, 387 F.3d at 1261. The *Frazier* Court relied upon the Committee Notes to the 2000 Amendments of Rule 702, which expressly states "[i]f the witness is relying solely or primarily upon experience, then the witness must explain how that experience leads to the conclusion reached, why the experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* In other words, an expert must have some independent verification of his opinions in the form of research, hard data, publications, testing, or other validation. *Daubert*, 509 U.S. 590. Moreover, the trial judge must find that the proffered testimony is properly grounded, well-reasoned, and not speculative before it is admitted. Fed. R. Civ. P. 702.

### 3.     Expert Testimony Must be Helpful to the Trier of Fact and Relevant

Under Rule 702, expert testimony may be admitted if it will "assist the trier of fact." This condition "goes primarily to relevance." *Daubert*, 509 U.S. at 591 (stating "[e]xpert testimony which does not relate to any issue in the case is not relevant and ergo, non-helpful"). Another aspect of this

-4-

CASE NO.:   06-14019-CIV-MARTINEZ

analysis is whether expert testimony is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id.* In general, expert testimony encompasses matters that are "beyond the understanding of the average lay person." *U.S. v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). On the other hand, expert testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262.

### 4.    Expert Testimony Should be Excluded if it is More Prejudicial than Probative and/or if the Underlying Data is Not Reasonably Reliable

In addressing the admissibility of expert testimony, a court "should also be mindful of other applicable rules" of evidence. *Daubert*, 509 U.S. 595. Expert opinions based on otherwise inadmissible heresay are to be admitted only if the facts upon which the expert bases his opinion are "of a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703. Furthermore, even if relevant, an expert's testimony must be excluded under Rule 403 if its probative value is substantially outweighed by the danger that it will unfairly prejudice the other party or confuse the trier of fact. Fed. R. Evid. 403; *Frazier*, 387 F.3d at 1263 (excluding otherwise admissible evidence if substantially outweighed by the potential to confuse or mislead). Expert testimony may also be excluded if it is cumulative or needlessly time consuming. *Hull v. Merck & Co., Inc.,* 758 F.2d 1474 (11th Cir. 1985).

### 5.    Third Party Plaintiff Bears the Burden of Proving *Daubert* is Satisfied

Third Party Plaintiff, as the proponent of Mr. Richmond's testimony, bears the burden of proving its admissibility by a preponderance of the evidence. *Daubert,* 509 U.S. at 592 n.10; *See also, Cook ex rel. Estate of Tessler v. Sheriff of Monroe Cty.,* 402 F.3d 1092, 1107 (11th Cir. 2005) (explaining "[t]he proponent of the expert testimony carries a substantial burden under Rule 702"). Thus, an integral part of Third Party Plaintiff's burden is to come forward with objective proof that its expert's testimony satisfies the factors for admissibility. *Daubert II*, 43 F.3d at 1316 (stating "[t]he party presenting the expert must show that the expert's findings are based on sound science,

CASE NO.:  06-14019-CIV-MARTINEZ

and this will require some objective, independent validation of the expert's methodology").  To

satisfy this burden, Marconi must provide more than Mr. Richmond's self-validation of his own

conclusions. *Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## B.  DAVID M. RICHMOND IS NOT QUALIFIED AS AN EXPERT WITNESS ON THE ISSUE OF INTEREST RATES

At the outset, a court must determine whether, based on Federal Rules of Evidence 104(a)

and 702, a witness is qualified as an expert on the subject matter or issues to which they presume to

testify. They must be qualified by actual qualifications, education, training, or experience. *Daubert*,

509 U.S. at 592-93; *Watkins v. Telsmith*, 121 F.3d 984 (5th Cir. 1997) (excluding Plaintiff's

proffered expert where, in addition to unreliable methodology, expert lacked education in mechanical

engineering, and experience in machine design was limited to one project in an engineering class).

In other words, application of the *Daubert* factors is germane to evaluating whether an expert is a

hired gun or a person whose opinion in the courtroom will withstand the same scrutiny it would

among his professional peers.

In his report, David Richmond attempts to opine about the damages allegedly incurred by

Marconi as a result of obtaining a different interest rate than he would have obtained in March of

2005. *See*, Richmond Report P. 3.  However, regardless of the conclusions reached, Mr. Richmond

does not meet the expert qualification requirements under the Federal Rules to discuss interest rates.

*See*, Fed. R. Evid. 702 (requiring "knowledge, skill, experience, training, or education" with respect

to the opinions offered).  The record in this case is unquestionably clear that David Richmond has

neither the knowledge nor the experience to qualify as an expert in the field of real estate financing

and thus, is not qualified to testify as to the present value of Marconi's accumulated interest rate or

other interest loss calculation.

At a minimum, Mr. Richmond must possess specialized knowledge and actual experience

in the field in which he is to testify. *Wilson v. Wood*, 163 F.3d 935 (5th Cir. 1999) (excluding expert

who never conducted studies or published in relevant field, but relied on publicly available data).

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 - (561) 383-9200 - (561) 683-8977 FAX

CASE NO.:  06-14019-CIV-MARTINEZ

Indeed, to qualify as an expert, an appraiser should have, among other things, familiarity with the physical area at issue, as well as intimate knowledge of the market in that area. *Reynolds v. Reynolds,* 193 B.R. 195, 204 (D.N.J. 1996) (affirming exclusion of real estate appraiser's expert testimony who did not have "familiarity with the area" or "familiarity with the market"). Likewise, Mr. Richmond's interest opinion should be excluded because he does not have the requisite work experience or knowledge to render an expert opinion on the value of a condominium unit in Vero Beach, Florida.

By his own admission, Mr. Richmond's experience does not fall within the realm of calculating interest loans:

Q:     Do you have any mortgage – do you hold a mortgage brokerage license?
A:     **No, I do not.**

Q:     What experience do you have in financing real estate?

A:     **I don't finance real estate at all.**  I work with lenders that do.

*See,* Richmond Dep. P. 158.  Moreover, while Mr. Richmond testified that he took "appraisal principles [and] capitalization courses" through the Appraisal Institute, *see, Id* at 179, a few courses taken four years earlier is, quite simply, insufficient to establish Mr. Richmond as a qualified expert in the specific field of interest loan calculation. *Pride v. BIC Corp.,* 218 F.3d 566 (6th Cir. 2000) (observing the expert requirement "does not mean that a witness is an expert simply because he claims to be").

To be sure, despite the employment and professional experience listed in Mr. Richmond's report, *see,* Richmond Report P. 4-6 (Exhibit "A"), none relate to the type of testimony he plans to provide:

Q:     Have you taught any courses on interest loss calculation?

A:     **No, I have not.**

Q:     Have you authored any books regarding interest loss calculations?

A:     **No.**

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 - (561) 383-9200 - (561) 683-8977 FAX

CASE NO.:  06-14019-CIV-MARTINEZ

Q:      Have you written any articles regarding interest loss calculations?

A:      **No I have not**.

*See*, Richmond Dep. P. 181-182.  The law requires more than a mere relationship between an expert's work experience and the subject of his testimony. *Jinro Am., Inc. v. Secure Invs., Inc.,* 266 F.3d 993 (9th Cir. 2001) (lacking specialized knowledge of Korean business practices despite history as investigator in Korean business community);  *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994) (requiring expert to demonstrate "first hand familiarity" with subject of testimony).  As is the case here, the testimony of a purported expert should be excluded when it is beyond the scope of his expertise. *Smelser v. Norfolk Ry. Co.,* 105 F.3d 299, 303 (6th Cir. 1997) (examining "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for the witness to answer a specific question").

The obvious bears repeating: Mr. Richmond has <u>never had any meaningful involvement</u> in the calculation of damages based on lost loan comittments. It is clear that Mr. Richmond does not have the requisite background, work experience, or training to render an expert opinion on the topic of interest rates and damage calculations regarding interest loss based upon a specific mortgage loan rate.  He has absolutely no experience mortgaging or otherwise financing real estate.  Accordingly, Mr. Richmond is not qualified to render expert testimony on his second opinion in this case, and thus, his report and testimony should be excluded from evidence.

**C.      RICHMOND'S UNSUBSTANTIATED AND SPECULATIVE OPINIONS DO NOT MEET THE RELIABILITY REQUIREMENTS OF FEDERAL RULE OF EVIDENCE 702**

Mr. Richmond should also be excluded because he does not meet the stringent requirements set out in Rule 702. *Daubert*, 509 U.S. at 589-95 (requiring expert's proffered testimony to be objectively "reliable").  This demands, in critical part, a sound link between an expert's underlying

-8-

CASE NO.:  06-14019-CIV-MARTINEZ

work and his ultimate conclusion; in other words, his analytical work must genuinely support his opinion. *Joiner,* 522 U.S. at 146 (evaluating adequateness of "fit" between data and opinions proffered).  In analyzing Mr. Richmond's opinion of the value for the subject property, it becomes clear that it is without support and inadmissible.

Determining the reliability of a proposed expert's methodology is "the most significant of the *Daubert* factors", *see, Haggerty v. Upjohn Co.,* 950 F.Supp. 1160, 1163-64 (S.D.Fla. 1996), and the proposed expert's "conclusions must be based on sound principles and the discipline itself must be a reliable one." *Rider v. Sandoz Pharms. Corp.,* 295 F.3d 1194, 1197 (11th Cir. 2002).  Mr. Richmond's testimony and report falls woefully short of these requirements because: (1) they are based on incomplete data and information and are therefore speculative, unreliable, and inadmissible; and (2) he fails to identify the methodology he intends to use in valuing the subject property. *Corp. v. Chevron U.S.A., Inc.,* 279 F.Supp.2d 1250 (M.D. Fla. 2003) (excluding expert testimony where opinions and conclusions were based solely on speculation and he failed to identify methodology used).  Moreover, Marconi had the opportunity for six months to cure the deficiencies in Mr. Richmond's opinion, which were previously raised by Third-Party Defendants in September 2006, and chose to ignore them.

An expert must consider "sufficient facts or data" to formulate a reliable opinion. Fed. R. Evid. 702.  In this case, Mr. Richmond's opinion of value was based on insufficient facts and a large set of speculative and self-serving assumptions that were provided to him exclusively by Marconi, without having obtained any relevant independent information.  Indeed, not only did Mr. Richmond admit at deposition that he created a range of value for the subject property without inspecting it, *see,* Richmond Dep. P. 34, but he further did not review all of the information relevant to his analysis.  For example, Mr. Richmond purportedly compared sales of other penthouse condominium units in

-9-

CASE NO.:  06-14019-CIV-MARTINEZ

Vero Beach, Florida to reach his conclusion that the "prospective future" market value for the subject property, after complete renovation with specifically designated materials, would range between $1.4M and $1.6M. *See*, Richmond Report P. 3. However, Mr. Richmond never inspected these "comparable" units, and instead, based his entire opinion on "everything [he] could obtain from the multiple listing sheets" that were provided by a single broker that was recommended by Marconi. *See*, Richmond Dep. P. 84-85. Indeed, that broker merely provided Mr. Richmond with a very small number of listings from a system which Mr. Richmond did not have access to, and from which Mr. Richmond admittedly did not separately investigate. *Id* at 137-138.

Mr. Richmond's analysis is further marred by inaccuracies, incorrect assumptions, and outright manipulation of data, all of which render his testimony inadmissible. *Cayuga Indian Nation of New York v. Pataki*, 83 F.Supp.2d 318, 323 (N.D.N.Y. 2000) (excluding testimony of an expert real estate appraiser who utilized the sales comparison approach due to deficiencies in the expert's application of that approach). For example, Mr. Richmond considered the prices listed on those multiple listing sheets without taking any steps to verify or confirm the sales, *see, Id* at 68 (conceding that he does not know whether the comparable unit used to form his opinion ever sold for the price listed), or without any indication that such property would even result in a sale at the listed price. *Id* at 71 (using comparison which only had an asking price listed). Additionally, he considered listing prices from multiple listing sheets in 2006, even though his evaluation date is for August of 2005, and without even considering whether there would be a distinction in price in the Vero Beach market between those years. *Id* at 73-74. Further still, despite the fact that Mr. Richmond's entire appraisal is based upon a complete renovation with highly specific materials, he used comparable units without knowing what materials and finishings they had. *Id* at 101-102 (stating he was "sure" some of the units had certain finishings, but "didn't recall which ones"). A court must exclude proffered

-10-

CASE NO.:   06-14019-CIV-MARTINEZ

expert testimony if the expert's underlying factual assumptions are not supported by the evidence. *Chikovsky v. Ortho Pharm. Co.,* 832 F.Supp. 341, 345-46 (S.D.Fla. 1993) (excluding expert testimony for failure to base opinion on sufficient facts or data); *Cartwright v. Home Depot USA, Inc.,* 936 F.Supp. 900, 905 (M.D.Fla. 1996) (describing "curbside opinion" with no analytical support). Given that Mr. Richmond's inconsistent use of the comparable condominium units in the area, his opinion is unsupported and should be excluded. *Kuhmo,* 526 U.S. at 154 (emphasizing the issue is not "the reasonableness in general of a[n] [expert's] use of" a model to render his opinion, but rather the issue is "the reasonableness of using such an approach, along with [the expert's] particular method of analyzing the data thereby obtained").

In addition to the incomplete and insufficient facts relied on, Mr. Richmond's testimony is based entirely on unverified assumptions and information supplied by Marconi or those referred by him.  It is well settled that an expert will only be able to testify if he knows of facts specifically related to the litigation that enables him to express reasonably accurate conclusions, as opposed to offering speculation or conjecture. *Jones v. Otis Elevator Co.,* 861 F.2d 655 (11th Cir. 1988).  The Eleventh Circuit has stated that "expert opinion ordinarily cannot be based upon the opinions of others" for the exact reason that they are speculative and unreliable. *Am. Key Corp. v. Cole Nat'l Corp.,* 762 F.2d 1569 (11th Cir. 1985).  In this case, however, Mr. Richmond unabashedly admits that the primary basis for his testimony regarding his appraisal of the subject property was based solely on verbal conversations and information provided by Mr. Marconi:

Q:    The cost estimates that were provided to you by Mr. Marconi for the renovations –

A:    Yes.

Q:    – what steps did you take to verify those cost estimates?

A:    **I didn't take any to verify any of those particular cost estimates.**

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR  - WEST PALM BEACH, FLORIDA 33401 - (561) 383-9200 - (561) 683-8977 FAX

CASE NO.:  06-14019-CIV-MARTINEZ

Q:     **Did you just assume whatever Mr. Marconi told you was accurate?**

A:     I assumed that the document prepared by the contractor who gave it to Mr. Marconi
       was accurate...

Richmond Dep. P. 134.  It cannot be seriously disputed that blindly relying upon Marconi's

subjective biased unsupported information of what his renovation costs would be, when those figures

are at the heart of the instant dispute in making a "prospective future" market value for the subject

property based entirely on the completion of those renovations, is not the type of information

"reasonably relied upon by experts" in the field of property appraising. *See e.g., Gary v. Russel*

*Corp.*, 681 So.2d 310 (Fla. 1st DCA 1996) (excluding expert who relied exclusively on summary

of data provided by Plaintiff's law firm). Here, Mr. Richmond relied on the information provided

to him by Marconi or those referred by him without corroborating any of it.

Perhaps most important is the fact that Mr. Richmond himself concedes that his opinion of

value is based on a plethora of assumptions. *See*, Richmond Dep. P. 54 (stating "there's probably 30

different contingent limiting conditions"); *see also, Id* at 154 (listing several assumptions, such as

that it is based on a completion of the unit with the high quality materials described). *Finestone v.*

*Fla. Power & Light Co.*, 2006 WL 267330 (S.D.Fla. 2006) (excluding proposed experts' testimony

where false assumptions rendered experts' opinions unreliable as a matter of law).  Nothing in

*Daubert* or the Federal Rules requires a court to admit opinions which are connected to existing data

only by the *ipse dixit* of the expert. *Joiner*, 522 U.S. 136.  Either "hands on testing" or "review of

experimental, statistical, or other scientific data generated by others in the field" may suffice as a

reasonable methodology upon which to base an opinion. *Kuhmo Tire*, 526 U.S. at 151.  Mr.

Richmond's reliance on unwarranted assumptions to render his opinion of value for some

"prospective future" market, not only pushes the valuation higher, but increases exponentially the

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 - (561) 383-9200 - (561) 683-8977 FAX

CASE NO.:   06-14019-CIV-MARTINEZ

speculative nature of his appraisal. *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1057

(8th Cir. 2000) (emphasizing that "[e]xpert testimony that is speculative is not competent proof and

contributes 'nothing to a 'legal sufficient evidentiary basis'").

At its core, <u>Mr. Richmond's opinion is nothing more than Marconi's claims sanctified as the</u>

<u>"opinion" of an expert</u>. Moreover, it is clear that Mr. Richmond did not independently verify any

of the information that was provided to him, but rather, simply relied on the self-serving statements

of Marconi or those referred by him. This lack of actual information has not kept Marconi from

proffering Mr. Richmond's opinion of value, but Mr. Richmond's unreliable testimony should

prevent him from being used as an expert witness. Indeed, the quantity of unreliable and

unsupported assumptions that Mr. Richmond blindly accepts to form his appraisal opinion in this

case is appalling and alone justifies exclusion. Third Party Defendants invite the Court to review

the entire transcript of David Richmond's deposition to discover the multitude of other flaws in his

analysis which Third Party Defendant does not have space to detail. However, the point is

abundantly clear: Mr. Richmond has no reliable basis for his opinion of value and thus, his testimony

and report should be excluded.

**D.     MR. RICHMOND'S OPINION IS IRRELEVANT AND WILL NOT ASSIST THE
       TRIER OF FACT**

"Relevant evidence" is defined as "evidence having any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence." Fed. R. Evid. 401. To be relevant, therefore, the opinion must

be based on facts present in the case. The expert's "knowledge," i.e., her opinion, must be relevant

in that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.

R. Evid. 402 (all relevant evidence is admissible unless excludable on other evidentiary or privilege

bases).    Here, Mr. Richmond's opinions are based on assumed, erroneous and insufficient facts

-13-

CASE NO.:   06-14019-CIV-MARTINEZ

and, are therefore irrelevant.  Accordingly, Mr. Richmond's testimony and report must be excluded.

Expert testimony that is "imprecise and unspecific" will not assist the trier of fact and instead may serve to confuse or mislead the jury. *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe*, 402 F.3d 1092 (11th Cir. 2005).  Because of the powerful and potentially misleading effect of expert evidence, an imprecise and unspecific expert opinion should be excluded because it will not assist the trier of fact. *See, Id.*  Under this rationale, this Court should clearly find Mr. Richmond's opinion of value is irrelevant because it reflects only his personal beliefs, and not any concrete or technical data as *Daubert* requires, which will not be helpful to the trier of fact, and will mislead the jury and waste a large amount of time.  To be sure, Mr. Richmond's appraisal opinion clearly falls into the category of "imprecise and unspecific", and thus, irrelevant and inadmissible.  Mr. Richmond even admitted that the information he relied on in forming his damages opinion was so preliminary and based on so many assumptions that its accuracy was impossible to verify.  *See*, Richmond Report P. 3 (stating that upon making a complete inspection of the unit and the surrounding area, he would be able to provide an "exact opinion of value"); *see also,* Richmond Dep. P. 154-155 (stating his appraisal of $1.4M to $1.6M is contingent upon over 30 assumptions and limiting conditions).  It should be further noted that Mr. Richmond had the opportunity to correct his preliminary opinion due to the extended discovery deadline, but has failed to do so.  Consequently, Richmond's appraisal opinion itself is so imprecise and unspecific that it cannot possibly assist the jury.  Without a valid methodology and analysis, Mr. Richmond' s damages opinion cannot support the pertinent inquiry in this case.

Further, the conclusions Mr. Richmond offers in his report provide nothing beyond the understanding of the average lay person. *See, Ruoco,* 765 F.2d at 995 (observing expert testimony is admissible if it offers something "beyond the understanding and experience of an average citizen").  For example, in *Cook,* 402 F.3d 1092, the Eleventh Circuit affirmed the exclusion of expert testimony regarding the procedures facilities should enact and follow because "[s]ome of the opinions expressed in his report concern matters that arguably lie within the understanding of the

-14-

CASE NO.:   06-14019-CIV-MARTINEZ

average lay person, making expert testimony unhelpful to the trier of fact. Others are unsubstantiated by any factual basis." *Id* at 1111. Mr. Richmond's testimony resembles and suffers from the same problems as the expert testimony excluded in *Cook*. It is within the understanding of a lay person to look at various listings of real property for sale in the area and to come up with a proposed "range of value" that is not substantiated in fact, *see*, Richmond Dep. P. 68 (admitting he did not confirm the sales), and susceptible to a multitude of contingencies. *Id* at 54.

Moreover, Mr. Richmond's damages opinion, based on insufficient facts and undefined principles, will not aid the trier of fact in assessing Marconi's alleged damages. *U.S. v. 0.161 Acres of Land*, 837 F.2d 1036, 1042 (11th Cir. 1988) (holding "[w]here an expert's testimony could mislead the jury by addressing factors which as a matter of law are not relevant to the issues in the dispute, then exclusion [ ] is appropriate"). In this case, the subject unit that Mr. Marconi has proposed to purchase is a completely gutted space, without any of the "high quality" finishings that Mr. Richmond has made his appraisal contingent upon. However, Mr. Richmond never did an "as is" evaluation of the property, *see,* Richmond Dep. P. 12, but rather, only opined on the "prospective future" market value, assuming that certain finishings would be placed therein. Accordingly, there is absolutely no fit or nexus between the analysis David Richmond did with regards to appraising the "prospective future market value" of the subject unit and the verifiable facts of the case itself, let alone a nexus sufficient to satisfy the strict requirements for relevant expert testimony. To be sure, the jury should not be permitted to hear alleged "expert testimony" regarding the unit's "prospective future value" when the alleged "expert" has not even defined what the unit's present value is. The fact is, Mr. Richmond's opinion is so imprecise and unspecific that it will not assist the trier of fact and should therefore be excluded.

## CONCLUSION

Under the Federal Rules and *Daubert*'s three-part inquiry, David Richmond's testimony on the subject property's interest loss calculation should be excluded because he is not qualified, and his opinions on the appraisal value and interest loss calculation are both unreliable and irrelevant.

-15-

CASE NO.:   06-14019-CIV-MARTINEZ

Mr. Richmond's report is precisely the type of unsubstantiated, unverified and unreliable opinion

that should be excluded as totally unhelpful to the trier of fact.  Indeed, Marconi is far from satisfying

his burden of establishing a foundation for the admission of Mr. Richmond's report or his testimony.

Most significantly, Marconi willfully failed to cure any of the deficiencies.  Accordingly, Third Party

Defendant respectfully request this Court exclude the report and testimony of David Richmond, and

for whatever further relief this Court deems equitable and proper.

### RULE 7.1(A)(3) CONFERENCE

**Pursuant to Local Rule 7.1(A)(3), undersigned counsel has conferred
with opposing counsel via email in a good faith effort to resolve, by agreement,
the issues raised by this motion. Third Party Plaintiff has not responded to said
inquiry. Undersigned counsel will continue the good faith efforts to reach an
agreement with opposing counsel and will supplement this motion should
opposing counsel comply.**

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via U.S.
Mail this 1st day of March, 2007, to: **STEVEN SLOANE NEWBURG, ESQUIRE,** Fowler White
Barnett PA, Phillips Point - West Tower, Suite 800, 777 S. Flagler Drive, West Palm Beach, FL
33401; **VICTOR J. PIOLI, ESQUIRE,** Johnson & Bell, LTD, 33 W. Monroe Street, Suite 2700,
Chicago, IL 60603; **SHELLEY STIRRAT, ESQ.,** W. Thomas Wackeen, Esq., Fox, Wackeen,
Dungy, et al, 1100 S. Federal Highway, Post Office Drawer 6, Stuart, FL 34995-0006; and
**GEOFFREY L. JONES, ESQ.,** Jeck, Harris & Jones LLP, 1061 E. Indiantown Road, Reynolds
Plaza, Suite 400, Jupiter, FL 33477.

COLE, SCOTT & KISSANE, P.A.
Attorneys for Third Party Defendants
1645 Palm Beach Lakes Blvd., 2nd Floor
West Palm Beach, Florida 33401
E-Mail: postman@csklegal.com
Telephone: (561) 383-9234
Facsimile: (561) 683-8977

By: _____
BARRY A. POSTMAN
FBN: 991856
S. JONATHAN VINE
FBN: 010966

-16-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 06-14019-CIV-MARTINEZ

JANET BOWIE PATTERSON, TRUSTEE,

    Plaintiff,

v.

GEORGE STATHAS, CLOCK TOWER
PROPERTIES, LLC AND JOSEPH
MARCONI,

    Defendants.
_____/

JOSEPH MARCONI,

    Counterclaimant, Cross-claimant
    and Third-Party Plaintiff,

v.

JANET BOWIE PATTERSON,

    Counterdefendant,

GEORGE STATHAS and CLOCK
TOWER PROPERTIES, LLC,

    Cross-defendants; and

RACQUET CLUB OF VERO BEACH
CONDOMINIUM ASSOCIATION; SUE OTT;
HOBE POLLARD; MIKE BALSAN; and
CHARLES VOGT,

    Third-Party Defendants
_____/

# EXHIBIT "A"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION
Case No. 06-14019-CIV-MARTINEZ-LYNCH

JANET BOWIE PATTERSON, TRUSTEE,
          Plaintiff,

v.

GEORGE STATHAS, CLOCK TOWER
PROPERTIES, L.L.C. AND
JOSEPH MARCONI,

                    Defendants.
_____/

JOSEPH MARCONI
          Counterplaintiff and Third-Party Plaintiff v.
JANET BOWIE PATTERSON, GEORGE STATHAS,
CLOCK TOWER PROPERTIES, L.L.C.,
 Counterdefendants, RACQUET CLUB OF VERO
 BEACH CONDOMINIUM ASSOCIATION,
SUE OTT, HOBE POLLARD, MIKE BALSAN,
CHARLES VOGT, Third-Party Defendants.
_____/

### JOSEPH R. MARCONI'S SUPPLEMENT TO RULE 26 DISCLOSURE

Counter-plaintiff, JOSEPH R. MARCONI ("Marconi"), submits the following supplement to

his FED. R. CIV. P. 26 expert disclosure.

1.      David M. Richmond is a certified real estate appraiser. A copy of his curriculum vitae

is attached hereto as Ex. A. Mr. Richmond is expected to render testimony regarding the value of the

subject premise as well as the lost value of Mr. Marconi's loan commitment from Northern Trust

Bank. A summary report of Mr. Richmond's findings is attached hereto as Ex. B.

                              Respectfully submitted,
                              JOSEPH R. MARCONI
                              By: _Victor J. Pioli_
                              One of His Attorneys

Victor J. Pioli
JOHNSON & BELL, LTD.
33 W. Monroe St., Suite 2700
Chicago, IL 60603
312/372-0770 - Tel
312/372-9818 - Fax

Faxed

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that I served the foregoing **Joseph R. Marconi's**

**Supplement to Rule 26 Disclosure** to counsel identified below via regular mail on this 23rd day of

August 2006.

*Victor T. Pisl.*

Barry A. Postman
S. Jonathan Vine
Cole, Scott & Kissane, P.A.
1645 West Palm Beach Lakes Blvd.
2nd Floor
West Palm Beach, Florida 33401
*Attorneys for Third Party Defendants,*
*Racquet Club of Vero Beach Condo Ass'n,*
*Sue Ott, Hobe Pollard, Mike Balsan,*
*and Charles Vogt*

Shelley Stirrat
W. Thomas Wackeen
Fox, Wackeen, Dungy, et al.
1100 S. Federal Highway
Post Office Drawer 6
Stuart, Florida 34995-0006
*Attorneys for Plaintiff, Janet Bowie Patterson*

Geoffrey L. Jones
Jeck, Harris & Jones, LLP
1061 E. Indiantown Road
Reynolds Plaza
Suite 400
Jupiter, Florida 33477
*Attorneys for Defendants George Stathas*
*and Clock Tower Properties, LLC*

DAVID M. RICHMOND, SRA
DAVID M. RICHMOND, INCORPORATED
20724 CARDINAL COURT
FRANKFORT, ILLINOIS 60423

Engaged since 1978 in the profession of real estate appraising and consulting.  As
President of David M. Richmond, Incorporated, with offices at 20724 Cardinal Court,
Frankfort, Illinois, and 500 River Oaks Drive, Calumet City, Illinois, has been engaged in
the real estate appraisal profession in the Metropolitan Chicagoland Area; the counties of
Cook, DuPage, Will, Lake, McHenry, Kane, and Kendall; and other sections of the
United States including Indiana, Michigan, Tennessee, Georgia, and Hawaii.

## EDUCATION

Master of Arts in Science with a major in Environmental Science, Human and
Environmental Planning (graduated with high honors) – 1982, Governors State
University, University Park, Illinois

Bachelor of Arts in Business Education with a major in Office Administration – 1981,
Governors State University, University Park, Illinois

## PROFESSIONAL CERTIFICATION

Certified General Real Estate Appraiser,
State of Illinois
License No. 153-0000684

EXHIBIT

A

## PROFESSIONAL AFFILIATIONS

Member of the Appraisal Institute, SRA designations, No. 1927

Member, Ethics and Counseling Panel, Chicago Region; Appraisal Institute, 1993 – present

Chairman, Admissions Committee, Illinois Chapter; Appraisal Institute, 1990 – 1992

Instructor in appraisal principles and valuation techniques; Chicago Board of Realtors

Illinois Association of Realtors

Greater South Suburban Board of Realtors

National Association of Real Estate Boards

## APPRAISAL EXPERIENCE

Appraisals for purposes of residential mortgage loans, estates, condemnations, partial interests, foreclosures and real estate tax protests.

Types of properties appraised include residential, multi-family, commercial, industrial, and special purpose.

Court testimony as an expert witness for federal, state, and local governments

## PROFESSIONAL AND RELATED COURSEWORK

Course V111 – Single-Family Residential Appraisal – American Institute of Real Estate Appraisers
Basic Valuation Procedures – American Institute of Real Estate Appraisers
Capitalization Courses A & B – Appraisal Institute
Industrial Valuation – Appraisal Institute

Real Estate Transactions
Real Estate Appraisal 1
Architectural Styles and Terminology in the 20th Century
Construction Progress Planning
Sales Technology and Real Estate Brokerage
Energy, Resources and Society
Environmental Land Use Planning
Graduate Research: Land Use Planning
Grassroots Concepts in Human Ecology
Cooperative Education Programs in Recreational Planning
Economics of Urban Planning
Planning Frameworks
Principles and Practices of Urban Planning
Graduate Research: Land Use Regulation
Community Energy Planning: Fundamentals
Planning Methodology
Regional Planning
Graduate Internship: Recreational Planning
Community Energy Planning: Applications
Comprehensive Planning Studio
Fundamentals of Real Estate Lending

## EMPLOYMENT

President – David M. Richmond, Inc. Real Estate Appraiser and Consultant 1996-present
Independent Fee Appraiser – William H. Metz & Associates 1981 – 2003
Appraisal Trainee – A. L. Wagner and Co., 1978 - 1981

DAVID M. RICHMOND, INCORPORATED
REAL ESTATE APPRAISER AND CONSULTANT
20724 CARDINAL COURT
FRANKFORT, ILLINOIS 60423
PHONE (815) 806-9330
FAX (815) 806-9340
CELLULAR (708) 710-8350

PRELIMINARY VALUE INDICATION
AND INTEREST LOSS CALCULATION

FOR THE

RESIDENTIAL CONDOMINIUM UNIT (APARTMENT) A-600

LOCATED AT

3939 OCEAN DRIVE
VERO BEACH, FLORIDA

PREPARATION DATE OF THE REPORT
AUGUST 15, 2006



EXHIBIT

B

Mr. Victor J. Pioli, Esq.
Johnson & Bell, Attorneys at Law
Suite 2700
33 West Monroe Street
Chicago, Illinois

> Re:    Preliminary Value Indication
>        And Interest Loss Calculation
>        Residential Condominium Unit (Apartment) A-600
>        Located At
>        3939 Ocean Drive
>        Vero Beach, Florida

Dear Mr. Pioli,

In accordance with your request, I have reviewed floor plan, photographs and area descriptions relating to the condominium known as A-600 (Apartment 600) in building A, in the Racquet Club of Vero Beach facility located at 3939 Ocean Drive, Vero Beach, Florida. The property is legally described as follows:

> Dwelling Unit #A-600, The Racquet Club of Vero Beach, Buildings A and B, a condominium in Vero Beach, Florida, according to the Declaration of Condominium recorded in Official Records Book 503, page 210, public records of Indian River Country Florida and as amended.

The subject property is unique within the Racquet Club project. Overall, the Racquet Club incorporates 88 units in three apartment buildings (A, B, and C). These 88 units are broken down as follows:

34 units of 2 bedroom, 2 bathroom, 1,080 square feet
42 units of 2 bedroom, 2 bathroom, 1,130 square feet
6 units of 2 bedroom, 2 bathroom, 1,180 square feet
5 units of 3 bedroom, 3 bathroom, 1,700 square feet
1 unit of 3 bedroom, 3 bathroom, 3,500 square feet

The subject property is the sole 3,500 square foot unit in the project and commands extensive views over the ocean as well as Ocean Drive. As such, it has an intrinsic value due to its uniqueness.

I have reviewed sales of similar condominium units within the immediate area of the subject property in order to provide an opinion of the "Prospective Future" Market Value for the subject property, based upon complete renovation and remodeling with very good quality materials. The value, as demonstrated within this report is contingent upon the descriptions, photos, etc. being accurate. The subject property is currently gutted, consisting primarily of a slab floor, painted drywall walls and ceilings. The value, as demonstrated within this report is contingent upon this property being renovated and remodeled with flooring consisting of a combination of granite, marble, Brazilian cherry, or commensurate product. The kitchen cabinets will be constructed of cherry, oak or walnut and all countertops and vanity tops will be constructed of marble or granite. All plumbing fixtures and electrical fixtures will be of the highest quality and the unit will be heated by a zoned, high efficiency, gas-fired furnace with self-contained air conditioning. All window and door trim will consist of cherry, oak or walnut, and there will be cherry, oak or walnut coved moldings. All doors will consist of six-panel cherry, oak, or walnut, and the unit will be serviced by a central vacuum system and have a burglar alarm system.

The appliance package will consist of a washer, dryer, microwave, refrigerator, trash compactor, disposal, and will consist of Viking Brand or better.

Based upon an analysis of sales, penthouse condominium units in the Vero Beach area, it is my opinion that the value of the property would range from a low of $1,400,000.00 to a high of $1,600,000.00. I would be able to provide an exact opinion of value, once I have made a complete inspection of the subject unit as well as the general area surrounding the subject property.

I am also providing an estimate of the additional interest money that will be required for payment, due to the difference in interest rates from March 11, 2005 and August 14, 2006. The original annual percentage rate that would have been incurred on March 11, 2005 was 5.204. The annual percentage rate for August 14, 2006 would be 6.754. Based upon a three-year balloon for a $750,000.00 mortgage, the total difference in interest would be $34,925.00. The discounted present value of the accumulated interest over three years would be $32,306.00, rounded.

I trust this information will be sufficient for your needs at this time.

Respectfully Submitted,

David M. Richmond, Inc.